IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Tyrone Lamar Roberson,            )
                                  )
                    Plaintiff,    )     Civil Action No. 8:09-1333-CMC-BHH
                                  )
          v.                      )     **REPORT AND RECOMMENDATION**
                                  )         **OF MAGISTRATE JUDGE**
South Carolina Department         )
of Corrections, Jon E. Ozmint,    )
SCDC Office of General Counsel ,  )
                                  )
                    Defendants.   )
_____ )

          The Plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42,

United States Code, Section 1983.  This matter is before the Court on the Defendants'

Motion for Summary Judgment (Dkt. # 20); and the Plaintiff's Motions for Declaratory

Judgment (Dkt # 24),  for a Preliminary Injunction (Dkt. # 27), and  to Amend his Motion for

a Preliminary Injunction (Dkt. # 29).

          Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under 42  U.S.C. § 1983, and submit findings and recommendations

to the District Court.

          The Plaintiff originally filed this action in state court.   On May 20, 2009, the

Defendants removed the action to this Court.  On August 5, 2009, the Defendants moved

for summary judgment.  By order filed August 7, 2009, pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal

procedure and the possible consequences if he failed to adequately respond to the motion.

On September 4, 2009, the Plaintiff filed a response opposing the Defendants' summary

judgment motion and a motion for a declaratory judgment.  On October 2, 2009, the Plaintiff

filed a motion for a preliminary injunction and then on December 10, 2009, he filed a motion

to amend his motion for a preliminary injunction.

## PROCEDURAL HISTORY/ FACTS

The Plaintiff is an inmate with the South Carolina Department of Corrections ("SCDC") who is currently housed at the Lee Correctional Institution ("LCI"). On April 22,. 2009, the Plaintiff filed the Complaint (Dkt. # 1) in this action in state court, and the Defendants removed this action to this Court on May 20, 2009. The Defendants state that subsequent inquiry revealed the existence of additional state court documents which were not in their counsel's possession at the time of removal. (Defs.' Mem. Supp. Summ. J. Mot. at ) Therefore, these additional state court documents were filed on May 22, 2009. ( Dkt. # 1 Attachs. # 4-10.)

Reviewing the state documents and other docket entries is helpful in understanding the procedural history of this action. The Plaintiff's state court action, 2007-CP-400-4780, was initiated when the Plaintiff mailed a letter, dated July 16, 2007, to the clerk of the state circuit court. (Dkt. # 1 Attach. # 8.)[1] The Plaintiff stated he was seeking a Writ of Mandamus for a "change of venue" from the Administrative Law Court ("ALC") to the state circuit court because the ALC refused to process his action. *Id.* On February 25, 2009, the state clerk of court sent the Plaintiff a letter stating that if she did not receive proof of service within ten days, the action would be dismissed. (Dkt. # 11 Attach. # 13.) The Plaintiff states he received this letter on March 9, 2009. (Dkt. # 1 Attach. # 4.)

On March 23, 2009, the Plaintiff filed a second "Writ of Mandamus" in this state action. (Dkt. # 1 - Attach. # 4.)[2] In his second Writ of Mandamus, the Plaintiff again sought a "change of venue" from the ALC to the state circuit court in an appeal of a disciplinary

---

[1]The letter was received July 23, 2007, and the state action was filed August 1, 2007. (Dkt. # 1 Attach. # 8.)

[2]There is no proof in the record that the first "Writ of Mandamus" was ever served on the Defendants. In any event, the Plaintiff raised the same issues in his second Writ of Mandamus which was filed on March 23, 2009, and apparently was served on the Defendants.

conviction.[3]  Again, the Plaintiff stated that the ALC judge refused to accept an appeal and it was returned to him unprocessed.  (Dkt. # 1 Attach. # 4 at 3.)  In this writ, the Plaintiff also alleged a claim of deliberate indifference to his medical needs.  *Id.* at 4.

On April 6, 2009, the Plaintiff filed an Amended Writ of Mandamus in his state action.  (Dkt. # 1 Attach. # 9.)  In this amended writ, the Plaintiff alleges the Defendants did not answer a grievance regarding the denial of medical treatment which he filed on June 18, 2007, for ten months.  *Id.* at 2; 5.  He asserted claims regarding the Defendants' failure to timely answer the grievance and the underlying medical indifference claim.  Specifically, in his medical indifference claim, the Plaintiff alleged that on July 24, 2007, he was transported to the Kirkland medical facility for treatment by a dermatologist for a skin condition.  *Id.* at 6-7.  He alleged that he was told his condition required surgery, but that Ms. Gist denied him the surgery.  *Id.* at 7.  He alleged he had a skin tumor and cancer and that a delay in treatment caused him substantial harm.  *Id.*

On April 22, 2009, the Plaintiff also filed the Complaint in his state court action which as noted above was removed to this court.  In this Complaint, the Plaintiff alleges that he is bringing an action pursuant to the South Carolina Torts Claims Act for the Defendants' "grossly negligent breach of clearly established common law constitutional statutes. . . " (Compl. at 2.)

In his Complaint, the Plaintiff states that while housed in the administrative segregation unit ("ASU") at the LCI, he was deprived of the equal enjoyment and privileges under S.C. Code Ann. § 45-9-90[4] and § 24-5-90.[5]  (Compl. at 6.)  He also alleges he had a possessory right to property protected by the Constitution and a state created liberty

---

[3]The Plaintiff was convicted of disciplinary charges in March 2007 and he filed two Step 1 grievances regarding his disciplinary hearing on April 2, 2007.  (Defs.' Mem. Supp Summ. J. Mot. Attach. 8 and 9.)   These grievances were returned unprocessed because they did not comply with the grievance procedures.  *Id.*

[4]This code section legislates the equal enjoyment and privileges to public accommodations.

[5]This code section prohibits discrimination in the treatment of prisoners.

interest pursuant to S.C. Code Ann. § 10-5-210.[6] (Compl. at 8.) He then refers to Title VI of the Civil Rights Act of 1964 Civil Rights Acts, 42 U.S.C. § 2000d, and numerous South Carolina Department of Corrections ("SCDC") policies regarding rehabilitation and handicapped inmates and their assignment to institutions. (Compl. at 10.) He states that he wants to have his phone and visitation privileges reinstated because the SCDC policy provides that inmates will be encouraged and provided opportunities for involvement with family and community activities. (Compl. at 11.)

The Plaintiff states that he has a protected 8th Amendment right to not be subjected to cruel and unusual punishment for excessive fines or bail and he references an action in the South Carolina Administrative Law Court ("ALC"), 08-ALJ-04-00202. (Compl. at 12.) He then demands the production of all documents or things which relate to another action in the State ALC, 07-ALJ-04-00737. (Compl. at 13.) He refers to the Constitution and his rights under it and states that the ALC judge abused his discretion and committed extrinsic fraud and obstruction of justice. (Compl. at 14.)

The Plaintiff states that the Defendant Jon Ozmint was grossly negligent for failing to protect him and violated his due process rights in regard to the content neutral ban on publications which the Plaintiff receives in his in-coming mail, including "pictorial magazines, newspaper, photographs of family and friends, all novels reading, law book, etc." (Compl. at 16.) Specifically, he states that his "wife or girlfriend want to send [him] through in-coming mail - periodicals such as nude or lingerie photographs of themselves to keep Plaintiff interested, excited, stimulated and encouraged in their intimate social relationship while Plaintiff is imprisoned . . ." (Compl. at 22.) He also complains that he has been denied "contact visits and denied any conjugal visits." *Id.* He contends that his 1st, 5th, 8th, 14th Amendment rights have been violated and that he is being treated differently than other similarly situated inmates at LCI. (Compl. at 17; 24-27; 30; 33.) He contends that the content-neutral ban should be struck down and when reading material is censored,

---

[6]This code section provides that disabled persons are to be given the full use and enjoyment of government public buildings and facilities.

there should be, at a minimum, notice and an opportunity to be heard and the right to appeal.  (Compl. at 19-20.)

The Plaintiff then alleges that while in administrative segregation, he was denied "the benefits of any Kairos[7] sponsored religious feast, bread festival celebration as others similarly situated in the general population "in violation of state law and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, the Religious Freedom Restoration Act, 42 U.S.C. § 2000, the Rehabilitation Act of 1973, 29 U.S.C. § 794, Title II of  the Americans with Disabilities Act, 42 U.S.C. § 12131, and the 1st Amendment."  (Compl. at 30-33.)  The Plaintiff alleges he has been denied the right to access the courts.  (Compl. at 33.)  Finally, the Plaintiff generally alleges a conspiracy claim against the Defendants.  (Compl. at 36.)

The Plaintiff is seeking actual and punitive damages and an injunctive and declaratory relief in the form of a restraining order against the Defendants.  (Compl. at 38.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[7]Kairos is a Christian prison ministry which offers programs in many prisons in the United States. *See* http://www.kairosprisonministry.org.  *See also Blake v. Rubenstein*, 2009 WL 772924 * 8 n. 7 (S.D.W.Va. 2009).

(1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

Liberally construing the Complaint, the Plaintiff is alleging claims relating to the confiscation of his incoming mail; denial of contact or conjugal visits; denial of freedom to practice his religion; denial of access to the courts; denial of medical treatment; failure to properly handle grievances; and a conspiracy. The Defendants contend that the Plaintiff's claims fail "because they are false, frivolous and insubstantial, moot, barred by res judicata, and/or because plaintiff has failed to exhaust administrative remedies." (Defs.' Mem. Supp. Summ. J. Mot. at 4.)

**Removal**

Initially, the undersigned must address whether this court has jurisdiction. As set forth above, the Defendants removed this action from state court and the Plaintiff filed an

Objection to Notice of Removal. (Dkt. # 9.) As the Defendants state (Defs.' Mem. Supp. Summ. J. at 10), in this document, the Plaintiff appears to be moving for a remand to state court.

A defendant in a case in a state court may remove that case to a federal district court only if the state court action could have been originally filed in a federal district court. 28 U.S.C. § 1441. Generally, a case can be originally filed in a federal district court if there is diversity of citizenship under 28 U.S.C. § 1332 or "federal question" jurisdiction under 28 U.S.C. § 1331. Removal statutes are to be construed against removal jurisdiction, and in favor of remand. *See, e.g., Cheshire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F.Supp. 1098, 1102 (D.S.C.1990) (collecting cases).

A notice of removal must be filed by the defendant in the state court action within thirty days after the complaint in state court is served or within thirty days after the case becomes removable. 28 U.S.C. § 1446. A plaintiff's objection to an untimely removal by a defendant, in certain circumstances, is a waive-able defense when a federal district court otherwise would have subject-matter jurisdiction. In other words, if there is federal question jurisdiction or if there is diversity of citizenship, a plaintiff must file a motion to remand within thirty days after the notice of removal is filed. 28 U.S.C. § 1447(c).

If a plaintiff does not file a motion to remand within thirty days of the filing of the notice of removal, the plaintiff waives all procedural defects in the removal. *In Re Shell Oil Co.,* 932 F.2d 1523, 1527 & nn. 6-7 (5th Cir. 1991). In any event, however, subject-matter jurisdiction cannot be conferred by estoppel, waiver, or consent. *Buchner v. Federal Deposit Ins. Corp.,* 981 F.2d 816, 818 (5th Cir. 1993) (holding that "[a]lthough parties may waive their rights to remove a case or to contest the removal procedure, they may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver"). Thus, even absent a motion to remand, a federal district court must remand the case to state court if there is no federal question jurisdiction or diversity jurisdiction.

A federal court is not bound by the parties' characterization of a case. *Lyon v. Centimark Corp.,* 805 F.Supp. 333, 334 (E.D.N.C. 1992). A district court must first look at the plaintiff's complaint filed in the state court to determine if federal question jurisdiction is present. *Id.* District courts are authorized to disregard such characterizations only to avoid "unjust manipulation or avoidance of its jurisdiction." *Id.* at 334-35.

In his Complaint, the Plaintiff alleges that the Defendants violated clearly established constitutional and state rights. (Compl. at 39-40.) Although the Plaintiff has captioned his action as one under the South Carolina Torts Claims ("SCTC") Act, and he does allege violations under the SCTC Act, he also alleges numerous federal constitutional violations. Specifically, he alleges violations of his due process and federal civil rights, the 1st, 5th, 8th, and 14th Amendments, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Religious Freedom Restoration Act ("RFRA"), the Rehabilitation Act, and the Americans with Disabilities Act.

In his objections to the removal, the Plaintiff states that he "would be prejudiced from maintaining his cause of action pursuant to South Carolina Rules of Civil Procedures, Rule 14(a); and South Carolina Rules of Civil Procedures, Rule 18 (a)." (Dkt. # 9- Pl.'s Obj. at 2.) The Plaintiff further alleges that removal would prejudice him "from exhausting the remedies available in the state court of common pleas . . . ." *Id.* The rules cited by the Plaintiff do not provide any support for a remand of this action. Rule 14(a), SCRCP, addresses when a defendant may bring in a third party and Rule 18(a), SCRCP, addresses when a party may join additional claims against an opposing party. Importantly, in his objections, the Plaintiff does not state that he is not alleging federal claims.

Reviewing the Complaint, the Plaintiff raises numerous constitutional claims in his Complaint and these allegations clearly set forth questions of federal law under 42 U.S.C. §1983. It is uncontested that a lawsuit under § 1983 could be brought in the original jurisdiction of the federal court. Therefore, the requirements set forth in 28 U.S.C. § 1441 are met, and this court has jurisdiction over the claims asserted in this matter. Accordingly, the undersigned does not recommend that this action be remanded.

**Exhaustion of Administrative Remedies**

In a prior federal action, *Roberson v. Padula*, C/A # 06-15119-CMC-BHH, the Plaintiff complained about the confiscation of photographs from his wife contained in his incoming mail while he was in the ASU at the LCI. He also alleged the defendants interfered with his outgoing legal mail and denied him meaningful access to the courts. The defendants moved for summary judgment on the ground, inter alia, that the Plaintiff had failed to exhaust his administrative remedies. On December 15, 2007, United States District Court Judge Cameron Currie dismissed the action without prejudice on the ground that the Plaintiff had failed to exhaust his administrative remedies. The Defendants contend that in the present case, the Plaintiff is raising essentially the same claims and he has not pled or shown that he has exhausted his administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a §1983 action concerning his confinement. 42 U.S.C.A. §1997(e) states:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

In *Porter v. Nussle*, 534 U.S. 516 (2002), the United States Supreme Court held that the exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.

In order to exhaust the SCDC administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the

9

Warden.  A responsible official has sixty (60) days to respond to the Step 2 grievance.  The decision of the official who answers Step 2 is considered the SCDC's final response in the matter.  Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under §1983.  42 U.S.C. § 1997e.

Here,  there is no evidence that the Plaintiff ever submitted any Step 2 grievances regarding any of his claims.  The Plaintiff filed a Step 1 grievance on (# 224-06) regarding his mail claims on February 6, 2006.  The  Plaintiff also filed a Step 1 grievance  (# 2674-06) on December 6, 2006, and another Step 1 grievance  (#2691-06) on December 7, 2006, regarding his denial of access to the courts and his mail claims. (Defs.' Mem. Supp Summ. J. Mot. Attachs. 1 and 3.)  However, these grievances were all returned unprocessed for exceeding the page limitation.  The Plaintiff  was informed that his Step 1 grievances were not in the proper form and he was instructed on how to resubmit them.   He was further informed of the consequences if he failed to resubmit the grievance; the issues would be closed.  Despite this, the Plaintiff failed to resubmit the grievances.   Because the Plaintiff failed to resubmit his grievance in proper form, he did not exhaust his administrative remedies as to his mail claim.  *Stevenson v. Quaterman,* 78 Fed.Appx. 941 (5th Cir. 2003)(holding    claims    not    exhausted    when    grievance    was    returned    as illegible/incomprehensible, and prisoner was instructed to resubmit the grievance, which he did not do).  *See also Muhammad v. Berry,* 198 Fed.Appx. 738 (10th Cir. 2006) (holding because prisoner failed to properly follow the prison's grievance procedure as to any of his claims, he did not exhaust his administrative remedies and dismissal was proper).

On April 2, 2007, the Plaintiff filed two Step 1 grievances (#0661-07 and # 0662-07) in regard to his disciplinary conviction.  (Defs.' Mem. Supp. Summ. J. Mot. Attachs. # 6 and 7.)  Like the previously discussed grievances, these grievances also exceeded the page limit and were returned unprocessed.  Again, the Plaintiff was informed he could resubmit them in proper form, but he did not resubmit the grievances.  *Id.*

The Plaintiff filed a Step 1 grievance (#1293-07) regarding his denial of medical treatment claim on June 19, 2007.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 9.)   The

10

Warden did not respond until February 14, 2008. *Id.* However, there is no evidence that the Plaintiff filed a Step 2 grievance. Furthermore, there is no evidence in the record that the Plaintiff has exhausted his other claims.

In response, to the Defendants' argument that the Plaintiff has failed to exhaust his administrative remedies, the Plaintiff argues that this is a jury question. However, the Plaintiff has not set forth any evidence that he did exhaust his administrative remedies. The only evidence in the record is that he did not exhaust his administrative remedies as to any of his claims. Notwithstanding the Plaintiff's failure to exhaust his administrative remedies and the numerous procedural issues in this case, the undersigned recommends that the Defendants be granted summary judgment on the merits and that this action be dismissed with prejudice as discussed below.

**Merits**

The Defendants also argue that, assuming the Plaintiff has exhausted his administrative remedies, the Plaintiff's claims are frivolous. Essentially, the Plaintiff is alleging claims relating to the confiscation of his incoming mail; denial of conjugal visits; denial of freedom to practice his religion; denial of access to the courts, a medical indifference claim, failure to properly handle grievances, and conspiracy.[8]

**Denial of Incoming Mail**

In his prior federal action, the Plaintiff raised a similar issue when he complained of photographs being confiscated from his in-coming mail while he was housed in the ASU at the LCI. *See Roberson v. Padula*, C/A 8:06-1519. Pursuant to SCDC policy OP 22-12, §31.1, an inmate in ASU cannot receive photographs in his correspondence. (Defs.' Mem. Supp. Summ J. Mot. Attach. 13 ¶ 4.) Further, pursuant to SCDC policy PS-10.08, § 6.1.6,

---

[8]The undersigned is addressing only those claims alleged in the second mandamus petition and its amendment and the Complaint. To the extent that the Plaintiff has attempted to raise additional claims in various filings with the Court, these claims are not properly before the court.

the entire contents of an envelope containing unauthorized photographs are to be returned to the sender at the inmate's expense. *Id*. While the Plaintiff was housed in the ASU at Lee, incoming mail containing photographs was confiscated. (Defs.' Mem. Supp. Summ. J. Mot. Attach. #13 ¶ 5.) The Plaintiff was advised that the photographs had been confiscated, and the plaintiff had thirty days to pay the return postage of the photographs. *Id*. ¶ 5 and 6. While the Plaintiff did request that the photos be returned to his wife, the sender, and he submitted a debit form for the return postage, his inmate account had insufficient funds to cover the postage. *Id.* ¶ 7. On February 15, 2006, the Plaintiff was released from ASU and he then had the opportunity to claim the photographs, but he did not. *Id.* ¶ 9. In early March 2006, the photographs were destroyed. *Id*. ¶ 10.

In the current action, the Plaintiff states that the Defendant Jon Ozmint violated his due process rights in regard to the content neutral ban on publications which the Plaintiff receives in his in-coming mail, including "pictorial magazines, newspaper, photographs of family and friends, all novels reading, law book, etc." (Compl. at 16.) Specifically, he states that his "wife or girlfriend want to send [him] through in-coming mail - periodicals such as nude or lingerie photographs of themselves to keep Plaintiff interested, excited, stimulated and encouraged in their intimate social relationship while Plaintiff is imprisoned . . ." (Compl. at 22.) The undersigned notes that the Plaintiff alleges in his Complaint that he is housed in the ASU at LCI. (Compl. at 3.)

As a prison inmate, the Plaintiff retains certain First Amendment rights. *Thornburgh v. Abbott*, 490 U.S. 401, 407-408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87 (1987). In order to determine whether the regulation relied on by the Defendants is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right

12

would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner*, 482 U.S. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

In *Beard v. Banks*, 126 S.Ct. 2572 (2006), the Supreme Court recently upheld a policy similar to the SCDC's policy for inmates in ASU. In *Beard*, the Court concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. The Court determined the reason for the policy, which was to provide an incentive to promote better inmate behavior, satisfied the *Turner* standard. Likewise, here, the SCDC policy is an incentive to promote good behavior and a desire to avoid placement in the ASU. Furthermore, restricting prisoner access to pornography is rational because the restriction reduces the risk that inmates will engage in disruptive sexual acts and/or sexual violence, thereby promoting institutional security. *See Ramirez v. Pugh*, 486 F.Supp.2d 421, 433-35 (M .D. Pa.2007) (finding that there was a rational connection to a legitimate penological interest in banning pornographic materials, such as *Playboy* and *Penthouse,* in a prison facility since pornographic materials were found to "pose a threat to the security of the inmate population and also the safety of the prison staff," and could be used to "harass female staff").

Turning to the second factor in *Turner* and whether there are alternative avenues remaining open for the plaintiff to exercise his rights, the court notes that the SCDC policy does not deprive the plaintiff of all mail. The third factor in *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." 482 U.S. at 90. As the Supreme Court explained in *Beard,* the third factor is satisfied because correctional officials would otherwise not have this method of rewarding good behavior and for punishing inappropriate behavior.

Finally, in assessing whether the presence of ready alternatives undermines the

reasonableness of the policy, *Turner* does not impose a least restrictive alternative test. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003). The Supreme Court described this as a "high standard" to meet. *Id*. As the Supreme Court has recognized, restrictions on privileges are an effective "management technique" in controlling "high-security prisoners who have few other privileges to lose." *Id*. at 134. The Plaintiff has not offered any reasonable alternative. Based on the foregoing, the undersigned concludes that the SCDC policy is reasonably related to a legitimate penological goal. The Plaintiff has not shown that his constitutional right to receive incoming mail at the ASU in the LCI was violated. Accordingly, the Defendants should be granted summary judgment on this claim.

**Denial of Contact and Conjugal Visits**

The Plaintiff alleges his rights have been violated because his visitation rights are limited and he is denied contact and conjugal visits with his girlfriend and/or wife. However, "[f]ailure to permit conjugal visits does not deny an inmate a federal constitutional right." *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.1975). *See also Hernandez v. Coughlin,* 18 F.3d 133, 137 (2d Cir. 1994). "Visitation privileges are a matter subject to the discretion of prison officials." *McCray,* 509 F.2d 1334. Moreover, the Supreme Court, has held that the prohibition of contact visits is reasonably related to legitimate governmental objectives and that the Constitution does not require a detention facility to allow contact visits when experienced jail administrators determined, in their sound discretion, that such visits pose a security threat to the facility. *Block v. Rutherford,* 468 U.S. 576, 589 (1984).

Prisoners do not lose all of their constitutional rights upon conviction and incarceration. *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). These rights, however, may be curtailed to further legitimate goals of the correctional institution, including the need to maintain internal security. *Hudson v. Palmer,* 468 U.S. 517, 524 (1984). Furthermore, decisions made by prison officials regarding prison administration are entitled to significant

14

deference. *Bell,* 441 U.S. at 547; *accord Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir.1994). Thus, absent extraordinary circumstances, the courts may not second-guess prison administrators, nor should federal courts immerse themselves in the management of state prisons.  *Taylor,* 34 F.3d at 268.

**Denial of Right to Exercise Religion**

The Plaintiff alleges he was improperly denied "the benefits of any Kairos sponsored religious feast, bread festival celebration as others similarly situated in the general population" in violation of the RLUIPA and the First Amendment. (Compl. at 30-33.)   The RLUIPA prohibits state programs that receive federal funding from imposing a substantial burden on the religious exercise of an inmate unless the burden is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1.  It is clear that inmates are entitled to a diet in conformity with their religious beliefs under the Free Exercise Clause of the 1st Amendment and the RLUIPA. *Lovelace v. Lee,* 472 F.3d at 198-199.  The right of free exercise is limited, however, to the extent that an inmate's adherence to religious practices may be regulated by prison authorities so long as the regulations are "reasonably related to legitimate penological interests."  *Id.* at 89; *O'Lone v. Shabazz,* 482 U.S. 342  (1987).

Moreover, "only beliefs which are 'sincerely held' and 'religious in nature' are protected under the First Amendment."  *Sutton v. Rasheed,* 323 F.3d 236, 251 (3d Cir. 2003) (*citing DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000) ("if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request . . .")).   In *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006), the Fourth Circuit Court of Appeals adopted the definition of "substantial burden" announced by the United States Supreme Court in the Free Exercise Clause context in *Thomas v. Review Bd. Of Ind. Employment Sec. Div.* ., 450 U.S. 707, 718 1981), stating that "a substantial burden on religious exercise occurs when a state or local

government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"

Therefore, to demonstrate a violation of the Free Exercise Clause of the 1st Amendment, the Plaintiff must show that he has a sincerely held belief and that his claim is rooted in his religious belief. *See Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). Here, the Plaintiff fails to establish how the alleged denial of "any Kairos sponsored religious feast [and/or] bread festival celebration" prevented him from practicing his religion. Moreover, he does not claim that the Kairos food or other celebrations which he has allegedly missed are in any way part of any religious ritual or tenet of faith with which he subscribes.

The Plaintiff also alleges the denial of the "Kairos sponsored religious feast [and/or] bread festival celebration" violates the ADA and the Rehabilitation Act. The Fourth Circuit has held that "[t]he ADA and Rehabilitation Act generally are construed to impose the same requirements," and "[b]ecause the language of the Acts is substantially the same, we apply the same analysis to both." *Baird v. Rose,* 192 F.3d 462, 468 (*quoting Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264 n. 9 (4th Cir.1995)). In general, a plaintiff seeking recovery under either the ADA or the RA must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005); Baird v. Rose, 192 F.3d at 467. The Plaintiff has not set forth any evidence or allegation that he is disabled. Nor has he shown that he was otherwise qualified and that he was excluded based on his disability. Thus, the Plaintiff has not stated a viable constitutional claim regarding the denial of "any Kairos sponsored religious feast [and/or] bread festival celebration."

**Denial of Medical Treatment**

In his Amended Writ of Mandamus, the Plaintiff alleges he was denied medical treatment by Ms. Gist for a skin tumor and cancer. (Dkt. # 1 Attach. # 9 at 6-7.) Ms. Gist is not a defendant in this action. It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983. *See, e.g., Monell v. Dept. of Social Svs.,* 436 U.S. 658, 691-92 (1978). Further, to the extent the Plaintiff attempts to rely on the doctrine of supervisory liability against the defendants, the Plaintiff has failed to make any showing of supervisory liability. A medical indifference claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). Thus, in the context of a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison dentist's constitutional violation. *Miltier,* 896 F.2d 848 at 854. Accordingly, the Plaintiff has field to state a claim of medical indifference against the Defendants in this action.

**Denial of Access to Courts**

The Plaintiff generally alleges a denial of access to the courts claim. (Compl. at 33.) The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). In *Bounds,* the Supreme Court held that

the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id.* at 828. To state a denial of access claim, a prisoner must provide some basis for his allegation that the failure to provide access to law materials and books, mail, notary services, etc. have deprived him of meaningful access to the courts. *White v. White,* 886 F.2d 721, 723 (4th Cir. 1989). In *Lewis v. Casey,* 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996).

The Plaintiff utterly fails to allege or show how the Defendants' actions caused him to be injured. The Plaintiff simply alleges that such rights have been violated and he has been prejudiced as a result. As the Plaintiff fails to show some actual injury resulting from the alleged denial of access to the courts, his claim is without merit.

**Denial of Grievance Process**

As to the Plaintiff's claims regarding the grievance procedure, these allegations are without merit. Even if the Defendants failed to respond, or timely respond, to the Plaintiff's grievances, the Plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

18

Further, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Keeler v. Pea,* 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *Scott v. Hamidullah,* 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) (*citing Riccio v. County of Fairfax, Virginia,* 907 F.2d 1459, 1469 (4th Cir. 1990); *Johnson v. S.C. Dep't of Corrections,* 2007 WL 904826 at *12 (D.S.C. Mar.21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.") (*citing Riccio*, 907 F.2d at 1469).

**Conspiracy Claim**

In his Complaint the Plaintiff generally alleges a conspiracy claim against the Defendants. (Compl. at 36.) To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996). Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.,* 815 F.2d 1001, 1006-07 (4th Cir.1987). Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank,* 639 F.2d 1073, 1075-76 (4th Cir.1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. *Am. Tobacco Co. v. United States,* 328 U.S. 781, 809-10 (1946).

When a complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla.,* 866 F.2d 1121, 1126-27 (9th Cir.1989); *Cole v. Gray,* 638 F.2d 804, 811-12 (5th Cir.1981). Reviewing the Plaintiff's complaint, the undersigned concludes that the Plaintiff fails to allege any facts

indicating that the Defendants acted jointly to injure him, and his conclusory allegations are insufficient to state a claim upon which relief may be granted. *Id.* Accordingly, the conspiracy claim should be dismissed.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 20) be GRANTED and the Plaintiff's Complaint be DISMISSED with prejudice.

If the District Court adopts this report, it is FURTHER RECOMMENDED that the Plaintiff's Motions for Declaratory Judgment (Dkt # 24), for a Preliminary Injunction (Dkt. # 27), and to Amend his Preliminary Injunction Motion (Dkt. # 29) be DENIED as moot.


IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 27, 2010
Greenville, South Carolina


**The Plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).